(52 South. 253.)

No. 17,750.

MOORE v. O'BANNON & JULIEN et al.

(April 11, 1910. Rehearing Denied May 9, 1910.)

(Syllabus by the Court.)

1. LOGS AND LOGGING (§ 3*)—CONTRACT—ANNULMENT.

In a contract whereby standing timber is sold for a certain amount in cash, and the balance to be paid as the timber is cut (the vendees being allowed a specified time within which to do the cutting), and in which it is agreed that the vendees shall within a delay fixed build a sawmill, within a certain distance of the timber, and make payments for the timber, when cut, on pay days, to be fixed, at said mill, the stipulations with regard to the erection of the mill and the making of the payments there on pay days to be fixed are "accidental," being neither of the essence of the contract of sale, nor necessarily implied therein, and, though noncompliance with accidental stipulations may, where it is so agreed, and in some cases where there is no agreement to the contrary, furnish good cause to annul a contract, yet, where the parties in terms declare that in no event shall the contract become void save for noncompliance with a particular stipulation, which is of its essence, the courts cannot annul it for any other cause than that so specified.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. LOGS AND LOGGING (§ 3*)—CONTRACTS—ANNULMENT—GROUNDS.

Where an act of sale conveys standing timber to the vendees "and unto their heirs and assigns," and stipulates that, in no event, shall the sale become void unless the vendees fail to make the payments contemplated by such act, and, the vendees having resold the timber to another party, the original vendor receives a payment, on account, from such party, he cannot afterwards be heard to attack the title of such party on the ground that the original vendee had failed to comply with accidental stipulations, noncompliance with which by the terms of the contract was excluded as a ground for such attack.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

Appeal from Sixth Judicial District Court, Parish of Morehouse; J. P. Madison, Judge.

Action by Joseph W. Moore against O'Bannon & Julien and others. Judgment for plaintiff, and defendants appeal. Reversed, and judgment for defendants.

H. Flood Madison, for appellant Gulledge Bros. Lumber Co. David Todd, for appellee.

Statement of the Case.

MONROE, J. Plaintiff entered into a contract with O'Bannon & Julien (an ordinary partnership), witnessed by an instrument in writing, as follows:

"That for * * * $2.50 to us cash in hand paid, and a further consideration of the sum of $7.50 to be paid on or before 30 days from date,

* * * by O'Bannon & Julien, we hereby grant, bargain, sell, and convey unto the said O'Bannon & Julien, and unto their heirs and assigns, all the pine timber situated on the following lands, to wit: S. ½ of S. E. ¼, S. 15, T. 23, N. R. 6 E. The said O'Bannon & Julien shall have seven years from the date of this deed in which to cut and remove said timber and the right of ingress and egress over and through said lands. In case O'Bannon & Julien shall not have paid the sum of $7.50 within 30 days from date, this contract shall be null and void. . The condition and consideration of this sale is that the grantors are to receive, and the said O'Bannon & Julien are to pay,* * * $1.00 per 1,000 ft., log scale, out of the first timber cut, and that the balance, after enough timber is cut to pay the above sums, is to be paid by O'Bannon & Julien as the timber is cut and removed, and the payments are to be made at the sawmill of the said O'Bannon & Julien on the regular pay day at said mill each month after said timber is cut and removed. We hereby agree to warrant the title of said timber against all claims, and that said timber is free from incumbrances. O'Bannon & Julien agree to locate a sawmill within three miles of said timber within six months from date. This deed is, and shall be, binding on the grantors from its date, and in no event shall it become void unless O'Bannon & Julien fail to meet the above payments. Given under our hands and seals, this 12th day of July, 1905."

This instrument was duly signed and recorded, and the wife of the plaintiff added to it a waiver of homestead. The two amounts ($2.50 and $7.50) referred to therein were duly paid, and in October, 1905, the partnership of O'Bannon & Julien having been converted into the O'Bannon & Julien Lumber Company, the timber in question was sold to that company, by which on December 29, 1906, it was sold to Gulledge Bros. Lumber Company; neither of the parties mentioned having cut any of the timber (so far as appears) up to the present time.

Plaintiff brings this suit to annul the contracts thus mentioned, to cancel the registration thereof, and to have himself quieted in the possession of the timber in question; the gist of his complaint being that O'Bannon & Julien failed to erect the sawmill and appoint the times and place of payment, as stipulated; that their sale of the timber was unauthorized, and renders his position more insecure; and that Gulledge Bros. Lumber Company knew when the deeds to them were executed that the original contract had not been complied with. O'Bannon & Julien Lumber Company, cited through a curator ad hoc, made no appearance. Gulledge Bros. Lumber Company, similarly cited, and appearing through the curator ad hoc appointed by the court, filed exceptions of no cause of action and prematurity, which were overruled, and of prescription, which was referred to the merits, after which it answered, affirming the validity of its title to the timber, and, when the case was called for trial, it further excepted that plaintiff had made no tender of the amounts received by him (which exception was overruled, as coming too late), and that he is estopped to attack the transfer by O'Bannon & Julien to O'Bannon & Julien Lumber Company by having received from the company mentioned on February 13, 1906, a sum of $100, for which he gave a receipt, reading:

"Received of O'Bannon & Julien Lumber Co. $100, in addition to the sum of $10 paid by them. `Said sum of money is given now as part payment of the purchase price of timber situated upon the following lands, on which O'Bannon & Julien Lumber Co., have a deed, to wit:" (and then follows a description of the lands).

This plea of estoppel was objected to as coming too late, and, the objection having been overruled, plaintiff filed a supplemental petition, alleging that he received the money and gave the receipt on the representation that the mill would shortly be put up, and that O'Bannon & Julien would personally make payments there for the timber cut.

It was shown on the trial that work was begun on the mill referred to in the contract in March, and that the mill was completed in December, 1906; that O'Bannon & Julien Lumber Company operated it for a few days, and sold it (together with the timber in question) to Gulledge Bros. Lumber Company,

by which it was operated for about three months (though without cutting any of the timber acquired from plaintiff), at the end of which period the boilers and some parts of the machinery and appliances were removed; and that the mill has not since been operated. Some testimony was taken, the purpose of which appears to have been to show that the Gulledge Company knew, when it bought the property, that O'Bannon & Julien had not complied with those conditions of the contract relating to the erection of the mill within six months, and the establishment there of pay days, but the result of which was to show that said company had the title to the property examined by an attorney at law and bought on the faith of his report that it was good. It was also shown that the Gulledge Company is stronger financially than either O'Bannon & Julien or O'Bannon & Julien Lumber Company. And in the course of the trial that company repeated an offer, which is, substantially, made in the answer filed by it, to the effect that, when it cuts plaintiff's timber, it will pay him therefor, if the mill in question is not then in operation and pay days shall not have been established there, "at his residence, or at any bank or other place that he may designate, and at any time during the month following that in which the timber has been cut that the plaintiff may designate." To which offer plaintiff, in effect, replied that, having under the law the right to demand the dissolution of the contract, and having availed himself of that right, his answer to the proposition was to be found in his petition.

## Opinion.

The contract for the dissolution of which plaintiff sues was not specifically annexed to, and made part of, his petition, and hence the exception of no cause of action was properly overruled; but it was offered in evidence by plaintiff at the opening of the case, and there-

after, as it seems to us, all the other evidence offered in behalf of plaintiff (and which was admitted over the objection of the curator ad hoc representing Gulledge Bros. Lumber Company) was for the most part useless, if not irrelevant, since, conceding the truth of the allegations upon which plaintiff relies, he would not be entitled to the judgment prayed for. True, the contract provides that payments for the timber to be cut by O'Bannon & Julien "are to be made at the sawmill of the said O'Bannon & Julien on the regular pay days at said mill each month after said timber is cut and removed," but it is not pretended that any of the plaintiff's timber has yet been cut, and the vendees and their assigns are allowed seven years from July 12, 1905, within which to do the cutting, so there has been no default as to either the time or place of payment. It is also true that O'Bannon & Julien agreed "to locate a sawmill within three miles of said timber within six months from date," and that they failed to do so; but (1) after the six months had expired plaintiff received $100 from O'Bannon & Julien Lumber Company, the transferree of O'Bannon & Julien, as in part payment, in advance, of the price of his timber, and reserved no rights with respect to the then existing default, and the erection of the mill was begun in the following month and completed before the end of the year without any attempt on his part at putting in default; and (2) the provision of the contract relating to the erection of the mill is immediately followed by the stipulation:

"This deed is, and shall be, binding on the grantors from its date, and in no event shall it become void unless O'Bannon & Julien fail to meet the above payments."

If, therefore, plaintiff has sustained any injury by reason of failure of O'Bannon & Julien to erect the mill within six months, and has not condoned their default, or has been injured by the shutting down of the mill aft-

er it was erected (and no such injury is al-leged), his remedy, whatever it may be, is not to be found in an action to avoid the contract.

The stipulations relating to the erection of the mill and the making of the payments there on pay days to be fixed are quoad the sale of the timber "accidental," being neither of the essence of the contract nor necessarily implied from its nature, but depending sole-ly upon the will of the parties, regulated by the general rules applicable to all contracts. Civ. Code, art. 1764, par. 3. Where the par-ties so agree, or, in some cases, where there is no agreement to the contrary, noncompli-ance with accidental stipulations may furnish good cause to annul a contract. But in this case there is a specific agreement that "in no event, shall it [the contract] become void, un-less O'Bannon & Julien fail to meet the * * * payments"; and not only has there been no default with respect to the payments, but the plaintiff has been paid $100 more than the contract calls for, the amount having been apparently paid to, and received by, him in advance, and beyond the terms of said con-tract, in order to satisfy and compensate him with respect to the delay in the erection of the mill. If, under such circumstances, we should annul the sale because of the failure of O'Bannon & Julien or their assigns to com-ply with the accidental stipulation in ques-tion, we should be making and enforcing a contract between the parties which they de-clared in explicit language they did not in-tend to make or to have enforced.

Concerning the sale of the timber by O'Ban-non & Julien to O'Bannon & Julien Lumber Company, and by that company to Gulledge Bros. Lumber Company, as the original con-tract declares that the vendor sells to "O'Ban-non & Julien and unto their heirs and as-signs," and stipulates that in no event shall the sale become void unless the vendees fail to make the payments contemplated by the contract, and as plaintiff, after the sale to O'Bannon & Julien Lumber Company, receiv-ed a payment of $100 from that company, and, in so doing, acknowledged that it had a deed to the timber, we are of opinion that he (plaintiff) cannot now be heard to attack the title thus acknowledged on the ground that his original vendees failed to comply with the accidental stipulations, which, by the terms of the sale, were excluded as grounds for such attack.

There is no issue presented by the plead-ings as to the original validity of the sale in question, the complaint being that O'Bannon & Julien failed to comply with their obliga-tions thereunder; nor does plaintiff seek to recover any damages as having been sustain-ed by him in consequence of such noncom-pliance. His demand is that said sale and the sale to O'Bannon & Julien Lumber Com-pany, and by that company to Gulledge Bros. Lumber Company, be annulled and the regis-try thereof canceled, and he fails to show that he is entitled to the judgment demand-ed, and which, on the verdict of a jury, he obtained in the district court.

It is therefore ordered, adjudged, and de-creed that the verdict and judgment appeal-ed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendants, rejecting plaintiff's demand and dismissing this suit, at his cost in both courts.