## McINTIRE v. INDUSTRIAL SECURITIES CORPORATION.
### No. 14909.

Court of Appeal of Louisiana. Orleans.

Feb. 4, 1935.

Merrick, Schwartz, Guste, Barnett & Redmann, of New Orleans, for appellant.

Brian & Brian, of New Orleans, for appellee.

JANVIER, Judge.

D. C. McIntire claims of Industrial Securities Corporation $554.50, alleging that to be the fair market price of certain shares of stock of various homestead and building and loan associations, represented by stock certificates deposited by the said McIntire with defendant for sale, and alleging also that, although the stock has been sold, the proceeds have not been remitted to him.

Defendant corporation admits that the said certificates of stock were deposited with it for the purpose of sale, and that they have been sold, and it avers that plaintiff authorized defendant to sell the said stock at the current market price and to invest the proceeds in 150 shares of stock of Interstate Department Stores Corporation at the price then current on the stock market, and agreed that, since the proceeds of the homestead and building and loan association stocks manifestly would be insufficient to pay for the Interstate Department Stores stock in full, defendant might hold the certificates for the latter stock, and that he (McIntire) would pay the balance due in twenty-four equal monthly installments. (In the answer it is stated that 100 shares of Interstate Department Stores shares would be purchased, but this is manifestly a clerical error and should be 150 shares.)

Defendant further seeks to show that the market price of the homestead stock was $552, and that the said stocks were sold for this amount, and that a fair commission for making the sale is $6.50, and that thus the net

proceeds amounted to $545.50, and not $554.50 as alleged by plaintiff. (In the answer it is admitted that' the agreed balance resulting from the said sales is $554.50, but here again we find that this must be a clerical error, as the other allegations show a contention that the correct balance is $545.50.)

Defendant further alleges that the price paid for the stock of the Interstate Department Stores Corporation was $1,237.50, and that to this should be added a service charge of 10 per cent. or $123.75 made by defendant for purchasing the stock and for financing or "carrying" for a period of twenty-four months, the balance due. Thus defendant claims that as the net result of the said agreement Mr. McIntire became indebted to it for a balance of $815.75, payable at the rate of $33.99 per month, and that the said McIntire would have been entitled to the certificates for the said stock had he made all of the payments.

Assuming the position of plaintiff in reconvention, defendant corporation alleges that the market value of the said Interstate Department Stores stock dropped to such an extent that the total value thereof was less than the balance due thereon by Mr. McIntire, and that, when it called upon him for a further deposit to protect it against loss, he refused to comply with the said demand; that it thereupon sold the said stock for an amount which, because of taxes and commissions, represented $26.75 less than the balance due by McIntire to defendant. For this balance defendant seeks judgment in reconvention.

In the district court there was judgment for plaintiff for $554.50 as prayed for, and the reconventional demand was dismissed.

The record shows with reasonable certainty that the homestead and building and loan association stocks deposited for sale were sold for $552, and we feel that $6.50 is a fair commission for handling such a transaction. We thus conclude that the net amount for which plaintiff was entitled credit as a result of that transaction was $545.50. The proof that there were other sales of similar stocks on the same day at slightly higher prices does not outweigh the positive evidence that these particular shares were sold for the price shown.

The more important controversy arises over the question of whether or not McIntire agreed that the proceeds might be invested in Interstate Department Stores stock on the terms and conditions contended for by defendant corporation. He admits that his attention had been focused upon that corporation and that he had in fact actually instructed defendant to purchase for his account 150 shares at the current market price, but he insists that he had made the said purchase conditional upon the price being not in excess of $8 per share, and he also insists that he was not told that there would be a service charge made by defendant amounting to 10 per cent. of the total price of the stock.

An analysis of the testimony on behalf of both parties shows that on only two matters were there serious disputes:

(1) McIntire contends that his authority to purchase stock of the Interstate Department Stores corporation was qualified by a price limit of not over $8 per share, whereas defendant maintains that the only qualification was that it should be bought at the current market price, whatever that might be.

(2) McIntire asserts that he had no knowledge that there would be a service charge of 10 per cent. on the total purchase price, whereas defendant maintains that that feature of the agreement had been explained thoroughly.

McIntire contends that, at the time of his visit to New Orleans, no verbal agreement was entered into with reference to the purchase of the stock in Interstate Department Stores, Inc., and, as indicating that no such contract was entered into at that time, he points to the fact that, after he had left his homestead stocks with defendant and had departed to his home in a nearby parish, defendant prepared and sent to him for his signature a written contract under the terms of which, had he signed it, he would have agreed to purchase, and defendant would have agreed to sell, stock in the Interstate Department Stores, Inc. He contends that the preparation of the contract indicated that, whatever prior negotiations might have been carried on, the parties contemplated placing their understanding in writing, and that thus, until the said writing could be prepared and signed, there was no contract.

In this connection he relies on the doctrine which prevailed in Laroussini v. Philip Werlein, 52 La. Ann. 424, 27 So. 89, 90, 78 Am. St. Rep. 350, in the syllabus of which is found the following: " * * * If, when a verbal contract of lease is agreed on, it is understood, contemplated, and intended that it should be reduced to writing, that there should be a written lease, and that the written lease should take the place of, and stand for, what has been agreed on verbally in respect to the leasing of the property, then until the writ-

ing is drawn up and signed the contract is inchoate, incomplete, and either party, before signing, may * * * recede."

Plaintiff also asserts that the written contract prepared by defendant itself provides that "this instrument recites the entire agreement and supersedes all previous representations, promises, oral or written, on either side," and he maintains that, since the defendant's officers suggested that such a written contract be executed, it is evident that they did not, at that time, feel that a valid and complete agreement had already been reached.

Counsel for defendant concedes the soundness of the view expressed in the Laroussini Case, but maintains that the facts here are different and bring this matter rather under the ruling set forth in Knights of Pythias v. Fishel et al., 168 La. 1095, 123 So. 724, 726, in which it was held that an action would lie for breach of contract to sign a lease where "both parties considered that all the terms and provisions of the lease had been agreed upon," and in which the Supreme Court said: " * * * As those terms and provisions were sufficient to constitute the contract to be executed one of lease, we think that plaintiff discloses a cause of action for breaching the contract to sign the lease." See, also, Kaplan v. Whitworth, 116 La. 337, 40 So. 723, 726.

It is undoubtedly true that where, as in the Laroussini Case, although the parties agree upon all the terms, and yet both understand that the said terms are to be reduced to writing, and that on the execution of the said written document the contract shall come into being, there is no contract until the document is signed, and it is also true that where, as in the Knights of Pythias Case, the parties have agreed to all the essential terms and the agreement is complete in itself, the refusal of one of the parties to sign the written document merely evidencing what has already been agreed to does not destroy the effect of the contract already verbally assented to. But, where the parties have agreed to most but not to all the essential conditions of a contract and one of the parties prepares a proposed written document containing most of the terms agreed upon, but also containing others, there is no contract until that document is executed; and that is the situation which plaintiff claims exists here.

Plaintiff asserts that in at least one particular (the price to be paid) the written contract differed from the terms orally agreed upon, and that one condition not verbally agreed upon (the service charge of 10 per cent.) was inserted into the written draft, though it had not been orally discussed.

On these two points defendant presents two contentions: (1) It denies that plaintiff did not understand and agree upon the price and upon the service charge; and (2) it maintains that both of these conditions are unimportant or "accidental," and that therefore, even if plaintiff did not agree to either of them, still the oral contract is binding, since all of its necessary and important terms were agreed to.

The record leaves us unable to say that our brother below was in error when he resolved the question of fact in favor of plaintiff. We find no proof which we consider convincing that plaintiff was advised about the service charge. He himself denies that he was told that there would be such a charge, and the evidence to the contrary is merely that he was shown a blank form of contract and not that the portion referring to the service charge was read to him. The contract which was shown to him was not executed, and nowhere in the record do we find evidence which convinces us that he was told that he must pay 10 per cent. on the entire amount of the purchase as a charge for the financing of the balance which would remain due after the application of the credit due him on the purchase price of the stock.

We find also a rather extraordinary charge in defendant's answer, which is to the effect that on the day on which McIntire deposited his homestead stocks he was told that the balance due on the Interstate Department Stores stock must be paid by him at the rate of $33.99 per month. At that time the stock had not been bought; the price was not known; and the balance which he would be required to pay had not been ascertained.

We conclude that on neither of the points mentioned had there been the necessary meeting of the minds.

Defendant's contention that these two details were unimportant or "accidental" does not impress us. We can think of no more important features of such a contract than those involving the price to be paid and the expense to be incurred. It is true that in Moore v. O'Bannon & Julien, 126 La. 162, 52 So. 253, 255, the Supreme Court held certain stipulations to be "accidental" because not "of the essence of the contract nor necessarily implied from its nature," but we feel that price is of the very essence of a contract to purchase. In fact, in Kaplan v. Whitworth, supra, a case

relied on by defendant, the court said: "If parties agree that they shall make a sale, or a promise of sale, in the future, *but fail to agree* either as to the thing that is to be sold or *as to the price at which the sale is to be made*, they evidently fail to make any agreement at all. And it is equally plain that, *if the rate of the interest which the deferred part of the price is to bear is not fixed, the price is not fixed.* * * *" (Italics ours.)

Here both the price and the rate of interest on the deferred portion of the price were not fixed in the verbal agreement; hence there was no agreement.

Plaintiff is entitled to the return of the net proceeds of the sale of his homestead stocks.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended by reducing the amount thereof to $545.50, and that, as thus amended, it is affirmed, defendant to pay all costs.

Amended and affirmed.