The plaintiff is engaged in the contracting business in New Orleans and conducts his operations under the name of Brandin Slate Company. On November 18th, 1941, he entered into a written contract with the defendant, Mary Owens, under which he agreed to make certain alterations, additions and improvements to the real property of the defendant designated as Nos. 2427-29 London Avenue, New Orleans, in consideration of a price of $1890. This contract, which describes in detail the work to be performed by plaintiff, stipulates that the price of $1890 is "to be paid in monthly installments" and further that "Owner gives Brandin Slate Company permission to try and arrange the financing."
Alleging that, in accordance with his obligation under the aforesaid contract, he has fully performed the work required of him; that he is and has been ready and willing to deliver the building and improvements to defendant free and clear of all liens and claims for labor and material furnished by him which was used in connection with the alteration and repairs to the building and that he has made demand on defendant for the payment of the price due under the contract without avail, plaintiff instituted suit in the Civil District Court to recover from defendant the contract price of $1890.
After filing an exception of no right or cause of action which was overruled by the trial court, the defendant answered plaintiff's petition and denied the allegations of fact contained therein. She further set forth that the contract was void; that the price was exhorbitant; that plaintiff's agent obtained her signature to the so-called contract through fraud and deceit and that the court should declare that she was relieved of any and all responsibility in the premises.
The case thereafter proceeded to trial on the issues thus formed by the pleadings. At the outset of the hearing, counsel for defendant objected to the introduction of evidence in the case "for the reason this contract which we submit to the Court is not a contract upon which one can be sued on for the reason everything is in blank." After hearing argument on this objection, the court made the following ruling: "In this so-called contract everything that involves a meeting of the minds is blank. Considering the fact that the alleged contract was in fact no contract at all and there was no meeting of the minds evidenced in that written agreement, and that the petition does not allege any demand to recover on a quantum meruit, the Court must sustain the objection and exclude all evidence. I will dismiss the case as of non-suit, so that there will be no question of res adjudicata in the event of a new suit on a quantum meruit or some other contract growing out of the same transaction."
In conformity with this ruling, a judgment was rendered dismissing plaintiff's demand as in case of nonsuit. Both parties prosecuted appeals from the judgment, defendant contending that plaintiff's suit should have been dismissed absolutely and plaintiff maintaining that the judge erred in refusing to hear evidence in the case and in dismissing his demand. Since the record has been lodged in this court, counsel representing plaintiff in the District Court has joined the Armed Forces of the United States and other attorneys have been employed. The attorney, who represented defendant in the lower court, has died and, although defendant has been duly notified of the hearing, she has not appeared either in person or through other counsel.
The objection to the hearing of any evidence in the case, which was interposed in the lower court by counsel for defendant, was based upon the theory that there were "blanks" contained in the written agreement which were required to be filled out in order for the parties to execute a binding contract. The judge, in maintaining this objection, remarked that "in this so-called contract everything that involves a meeting of the minds is blank."
[1] An examination of the contract, which is attached to plaintiff's petition, reveals that it was executed on a printed form of Brandin Slate Company. The work which the contractor proposed to perform under the agreement is fully detailed in typewriting, as well as the price of $1890, which the defendant agreed to pay. The only "blanks" to be found in the document *Page 187 
are those contained in that part of the printed form referring to the making of a down payment by the owner and the execution of a promissory note, payable in installments, to be given to the contractor for the balance to become due on the work. Obviously, it was unnecessary for the parties in the instant case to fill in those blanks, as the typewritten portion of the contract, which prevails over the printed matter, did not contemplate any down payment at all or the giving of a promissory note for the price of the work. Hence, it is difficult for us to understand how the presence of the blanks in the printed portion of the contract was pertinent to the judge's ruling that a binding contract did not exist as there was no meeting of minds by the parties.
While the reason given by the judge for his statement that the contract is unenforceable because of lack of mutuality does not clearly appear from his ruling, it is evident that he was of the opinion that, because the parties stipulated that the purchase price was to be paid in monthly installments without stating the amount or the number of such installments, their failure to do so was fatal to the agreement. In other words, it is apparently the view of our brother below that an agreement to do work for a certain price, payable in monthly installments, is not a binding contract because, inasmuch as the parties have not agreed upon the amount of such installments, it is impossible for the court to fix the method of payment of the price.
[2] We cannot agree with this view. In an agreement to alter, repair or construct a building, where the work to be done is set forth and the price to be paid is fixed, all of the essentials of a binding contract are present. The mode of payment of the price, whether in installments or otherwise, is merely an accidental stipulation. Under Article 1764 of the Civil Code, it is provided that all things not forbidden by law may legally become the subject of contracts but that different agreements are governed by different rules "adapted to the nature of each contract to distinguish which it is necessary in every contract to consider:
"1. That which is the essence of the contract, for the want whereof there is either no contract at all, or a contract of another description. Thus a price is essential to the contract of sale; if there be none, it is either no contract, or if the consideration be other property, it is an exchange.
* * * * *
"3. Accidental stipulations, which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. The term given for the payment of a loan, the place at which it is to be paid, and the nature of the rent payable on a lease, are examples of accidental stipulations.
"What belongs to the essence and to the nature of each particular description of contract, is determined by the law defining such contracts; accidental stipulations depend on the will of the parties, regulated by the general rules applying to all contracts."
[3] Thus, it will be readily observed that the agreement under consideration contains all of the necessary elements of a binding contract, set forth in Article 1764, i. e., the work to be done by the contractor and the payment by the owner of a fixed price therefor. There is, however, an accidental stipulation contained in the agreement, which refers solely to the manner in which the price is to be paid by the owner — that is, that the parties contemplated that the owner would have the right to pay the agreed price in monthly installments. The fact that the amount of these installments is not fixed does not make the price indefinite but merely exhibits that the parties contemplated that the amount to be paid each month would be agreed upon at some future date. This intention is evidenced by another provision of the contract declaring that the owner grants to the contractor permission "to try and arrange the financing". In other words, it seems clear to us that, at the time the agreement was made and the price fixed, the contractor believed that he could arrange for a loan on the property whereby he could obtain the price of his work in full and in one payment. If he had been successful in arranging this loan, the covenant respecting the installment payments would have amounted to naught. However, if he was unsuccessful (as apparently was the case here), it became necessary for the parties to agree upon the amount of the monthly payments in order for the owner to liquidate the fixed price for the work. If, in fact, no agreement was made concerning the amount of the monthly installments, *Page 188 
the owner might have had the right to a rescission of the contract on the ground that she agreed only to become liable for the price, provided payment could be made by monthly installments. But can she now claim that there is no contract at all nor an obligation on her part to pay the fixed price, where she has permitted the contractor to execute his part of the engagement, on the theory that she agreed to become liable only if payments were made in monthly installments and that the amounts of said installments were not fixed? Stated in another way, if it be conceded that defendant had the right to prevent performance of the agreement, while it was still executory, on the ground that the amount of the monthly payments contemplated could not be fixed by amicable agreement, can she now make the same defense after she has permitted the contractor to execute his undertaking? We think not.
[4] It is well recognized that the nonperformance of an accidental stipulation does not invariably have the effect of abrogating an agreement forasmuch as such a covenant is not of the essence of a valid contract. See Andrus v. Eunice Band Mill Co., 185 La. 403, 169 So. 449 and Moore v. O'Bannon Julien,126 La. 161, 52 So. 253, 255. In the Moore case, which was quoted from with approval in the Andrus case, it is said: "The stipulations relating to the erection of the mill and the making of the payments thereon pay days to be fixed are quoad the sale of the timber 'accidental,' being neither of the essence of the contract nor necessarily implied from its nature, but depending solely upon the will of the parties, regulated by the general rules applicable to all contracts. Civ. Code, art. 1764, par. 3. Where the parties so agree, or, in some cases, where there is no agreement to the contrary, noncompliance with accidental stipulations may furnish good cause to annul a contract."
[5, 6] The accidental stipulation contained in the contract in this case was obviously inserted for the benefit of the defendant — for, if nothing had been covenanted by the parties respecting payment in installments, the price would become due as soon as the work had been completed by the contractor. See Civil Code, Article 2050. The provision in the contract, respecting the payment in monthly installments, does not contemplate the payment of interest to the contractor on the deferred balance of the price while the work was in progress and, therefore, the stipulation cannot in any sense be regarded as one in his favor. Hence, since the stipulation for installment payments was inserted solely for defendant's benefit, it could be waived by her. If we assume, as we must, that the contractor was unsuccessful in arranging for the financing of the job and if the parties were unable to come to an agreement respecting the amount of the contemplated monthly installments, defendant would have had the right to withdraw from the contract and have had it rescinded. But this right to withdraw from the engagement could be waived by defendant, either expressly, or impliedly by permitting the contractor to fulfill his part of the bargain without protest. In 17 C.J.S., Contracts § 443, pp. 926 and 927, we find the following:
"The right to rescind may be lost or waived by delay, or by words or conduct evidencing an intention not to exercise it, such as by accepting its benefits. * * *
"There is a waiver of the right to rescind a building contract where the contract is treated, by the party having such right, as still in force. So also a party to a building contract may waive his right to rescind the contract by not exercising such right promptly."
[7, 8] Hence, we conclude that, since the agreement under consideration contains all of the essential elements of a contract, i. e., the work to be done and the price to be paid, a valid contract subsists, despite the fact that it contains a provision concerning terms of payment which is vague and indefinite because the amounts of the monthly installments are not stated. It well may be that, if the judge had not refused to hear any evidence in the case, plaintiff or defendant could have cleared up the ambiguity as to the amount of the installments by submitting evidence to show that the parties, subsequent to the execution of the contract, agreed to, and fixed, the amounts which should be paid each month. Such evidence would be clearly admissible. On the other hand, if neither plaintiff nor defendant are able to show that an agreement was reached respecting the amounts of the monthly installments, plaintiff's petition nevertheless states a cause of action for recovery of the entire contract price, since he has alleged that he has fully performed his obligation under *Page 189 
the agreement. In view of this allegation, the question will be presented on the merits as to whether the defendant, in permitting plaintiff to execute his part of the engagement, has not waived, by her conduct or otherwise, her right to insist that she is not liable for the stipulated price on the ground that the parties contemplated that that price was to be liquidated in monthly installments and that no agreement could be reached concerning the amount of those installments. The result to be reached on this question can only be determined by the hearing of evidence.
We therefore hold that the objection interposed by defendant to the hearing of any evidence in the case was erroneously sustained and it is now overruled.
For the reasons assigned, the judgment appealed from is reversed and the case is remanded to the Civil District Court for further proceedings in accordance with law and consistent with the views herein expressed. The costs of this appeal are to be paid by the defendant, Mary Owens, other costs to await the final disposition of the matter.
Reversed and remanded.