BOLIN, Judge.
This is an action on an indebtedness in the form of an open account for $2,408.22, representing the alleged purchase price of a Scotsman Ice Maker and accessories in the sum of $2,361, plus $47.22 as sales tax. Plaintiff, in addition to seeking judgment for the aforesaid sum, prays that its vendor’s lien and privilege on the property be recognized. From a decision rejecting its demands, plaintiff has perfected this devolu-tive appeal.
The record reveals that on March 10, 1961, L. R. Anderson, sales manager for Claiborne Butane Company, Inc., and James *235 Searles, an employee of Scotsman Distributors, Inc., approached defendant in his place of business at Springhill with regard to the purchase of a Scotsman Ice Maker. After some discussion, Anderson and Searles left the establishment thinking a sale had been consummated for the amount sued for and that .it was well understood defendant could pay for the purchase on an installment basis by making a down payment of $250 and $107 per month for 24 months.
A few days later, the machine was installed in defendant’s place of business with his consent. Thereafter, an employee of plaintiff brought a note and chattel mortgage to defendant for h‘im to sign. He refused to sign, contending the ice machine was placed on his premises on consignment basis and he would not agree to the purchase on any other terms. Defendant refused to make any payments. Plaintiff then filed this suit and had the property which is the subject of this action sequestered. After judgment favorable to defendant, the sequestration was dissolved by consent of both parties and the property placed in the possession of Claiborne Butane Company with the understanding that such action would not constitute any admission of any nature. This appeal was then perfected.
The lower court assigned written reasons for judgment and after a discussion of the law and evidence, concluded:
“Apparently in the present case the carrying charges and/or interest were not agreed upon and hence, under the above cases, the parties never agreed on the price, one of the essentials of a' valid sale. It is also apparent that the parties did contemplate that their agreement would be reduced to writing and signed and under the cases cited the contract was not complete and either party was at liberty to withdraw until that was done.”
Our study of the record convinces us that our brother below, though correct in his statement of the law, was in error in the application of the principles involved to the facts of the instant case. LSA-C.C. art. 2439 provides:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
“Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.”
LSA-C.C. art. 2441 provides:
“The verbal sale of all movable effects, whatever may be their value, is valid; but its testimonial proof must be made agreeable with what is directed in the title: Of Conventional Obligations.”
The evidence adduced in this matter clearly shows that the object of the sale, that is the ice maker of the particular, ldnd actually delivered, was agreed upon. This is demonstrated by the insistence of Hackler upon a particular size storage bin as an accessory to the ice maker. That there was agreement as to price is certainly not seriously contested as it was admitted in the answer of defendant. Moreover, Mr. Hackler, in his testimony stated:
“Q. Mr. Hackler, what was the price and terms and so forth?
“A. Well, the price and terms — they was pretty well on the price and terms, but it seemed like they stepped it up a little bit. It wouldn’t have made a whole lot of difference if the machine had done any business.”
In addition, we think that any uncertainty concerning the interest and carrying charges is without relevance for several reasons. First, this is not a suit on the promissory note or chattel mortgage but for a money judgment representing the sale price plus sales tax and the only interest prayed for is legal interest from date of judicial demand. Furthermore, the installment payment plan was for the convenience of defendant and not necessary to the perfection of the sale.
*236 That there was consent to the transaction is evidenced by the installation of the machine in the presence of defendant a few days after the initial discussion. Therefore, there was an agreement as to the thing, price and consent indicating a completed sale transaction. However, defendant contends it was contemplated that the sales agreement was to be monumented by a written contract and until the signing of such contract there was no completed sale. He contends his failure to sign the papers presented him by an employee of plaintiff constituted a valid withdrawal from the negotiations.
In this connection, we find a concise statement of the applicable principles of law contained in McIntire v. Industrial Securities Corp. (Orl.App.1935) 158 So. 849:
“It is undoubtedly true that where, as in the Laroussini Case [Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89], although the parties agree upon all the terms, and yet both understand that the said terms are to be reduced to writing, and that on the execution of the said written document the contract shall come into being, there is no contract until the document is signed, and it is also true that where, as in the Knights of Pythias Case [Knights of Pythias v. Fishel, 168 La. 1095, 123 So. 724], the parties have agreed to all the essential terms and the agreement is complete in itself, the refusal of one of the parties to sign the written document merely evidencing what has already been agreed to does not destroy the effect of the contract already verbally assented to. But, where the parties have agreed to most but not to all the essential conditions of a contract and one of the parties prepares a proposed written document containing most of the terms agreed upon, but also containing others, there is no contract until that document is executed; and that is the situation plaintiff claims exists here.”
In the instant case, Mr. Anderson testified it was clearly understood the total price of the ice making machine was $2,361 plus sales tax. He further testified Mr. Hackler was told that if he wished to pay for the property on an installment basis, defendant could made a down payment of $250 in four weekly installments and pay the balance in 24 installments of approximately $107 each. This testimony was not seriously disputed and was corroborated by Mr. Searles. Therefore, the contract was complete in all its terms and the record does not disclose any understanding that the same would be reduced to writing to be effective. The papers that defendant was subsequently asked to sign apparently were only to secure the financing of the purchase and to perfect a chattel mortgage, not an attempt to reduce the contract to “writing. Therefore, we find that sale was completed on March 10, 1961, in defendant’s place of business.
The final defense urged is that Mr. Hackler agreed to the purchase only upon the representations of Searles that the machine would pay for itself. Defendant relies upon LSA-C.C. art. 1823 in this connection. This article provides:
“Errors may exist as to all the circumstances and facts which rélate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.”
We think this defense is without merit. There is no evidence that such a statement was made as a condition of the sale. It appears that this was the usual sales talk of any salesman. Further, there is no evidence that a certain time within which the machine would pay for itself was stipulated. Moreover, even if such conditions had been made a part of the contract, defendant only kept the machine for approximately two weeks during the cool spring months and it cannot be said that he gave sufficient time *237 witliin which to determine if the alleged conditions would be fulfilled.
Therefore, the judgment of the district court is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of Claiborne Butane Company, Inc., in the sum of $2,408.22 plus legal interest thereon from date of judicial demand until paid. It is further ordered, adjudged and decreed that the vendor’s lien of Claiborne Butane Company, Inc., on
“One (1) Model No. SF-2FA, Scotsman Ice Maker; One (1) Model No. SBAS1-100 Scotsman Ice Bin; One (1) Model No. MS-3, Scotsman Machine Stand; and the necessary pipe, pipe fittings, plumbing supplies; electrical materials, etc.,
be and is hereby recognized; and that defendant-appellee pay all costs of this suit.
Reversed and rendered.