SARTAIN, Judge.
Plaintiff, J. H. Lynch Distributing Company, Inc., is a distributor of vending machines, music boxes and related items. Defendant, Ivy Bonaventure is the owner of Bonnie’s Amusement Company and places coin operated amusement machines in various business establishments in the Baton Rouge area.
Plaintiff instituted this suit alleging that on March 31, 1967 it had sold and delivered to defendant, on open account, a certain music box valued at $1,778.49; that on April 28, 1967 plaintiff sold and delivered to defendant one Phono Vue unit valued at $922.59; petitioner further alleged that it had supplied materials and parts to defendant in the amount of $633.47; all having a total gross value of $3,334.55. The figure of $633.47 represents primarily film that was to be placed in the Phono Vue so that while the music box was placed in operation it was also possible to view dancing girls on the Phono Vue apparatus. Plaintiff also sought recognition of a vendor’s lien and privilege on the equipment plus its return.
Defendant contends that there was no sale perfected between him and the plaintiff; that the machine was placed with him on a trial basis and that he consistently refused to purchase the same and therefore owed plaintiff nothing except the return of the merchandise which was tendered to and refused by plaintiff.
The trial judge held that the plaintiff failed to bear the burden of proving a contract of sale between the parties and awarded judgment in the sum of $1,055.70, representing a portion of the revenue derived from the operation of the machine while in the possession of the defendant. The district court also recognized plaintiff’s vendor’s lien and privilege and ordered the immediate return of the equipment to the plaintiff. The parties were cast mutually for costs.
Defendant perfected a suspensive appeal and contends that the judgment of the trial court condemning him to pay to plaintiff a portion of the revenues allegedly derived from the operation of the equipment was contrary to the relief sought by plaintiff and also was unsupported by the evidence. In essence defendant contends that plaintiff is entitled to the return of the equipment and nothing else.
Plaintiff has appealed devolutively contending that there was in fact a contract of sale between the parties and that it is entitled to judgment against the defendant in the original amount sought. Alternatively, plaintiff urges the affirmation of the trial judge’s decision with respect to the monetary judgment granted in its favor.
We are of the opinion that the decision of the trial judge holding that plaintiff failed to prove the essential elements of the contract of sale is correct and should be affirmed. For reasons more fully hereinafter stated we are also of the opinion that the judgment rendered in favor of plaintiff and against the defendant in the amount of $1,055.70 is supported by the record, is fair and equitable under the circumstances, and certainly does not constitute manifest error and should be affirmed.
The facts giving rise to this litigation are naturally in dispute. Plaintiff’s version of the instant transaction consists solely of the testimony of its vice-president, Mr. Edward W. Holyfield. Mr. Ho-lyfield testified that he had dealt with the défendant for approximately twenty years. He stated that he met with defendant at the Stockyards Cafe which is next door to defendant’s business address during the early part of March of 1967 and discussed the purchase of the equipment with him. He said that at the time Mr. Bonaventure agreed to purchase the equipment. Accordingly, on March 14, 1967 the phonograph together with the wall boxes and *810 other supplies were shipped to defendant. On April 21, 1967 the Phono Vue and one roll of film were shipped to the defendant. Mr. Holyfield came to Baton Rouge and assisted in the initial placement of the equipment at the Stockyards Cafe. He testified that he then spent the better part of the remainder of the year attempting to get Mr. Bonaventure to make some arrangement for the payment of the equipment. He asserted that defendant refused to answer his correspondence or was out when he called. On August 7, 1967 he forwarded to defendant a Louisiana form of sale and chattel mortgage which called for the financing of the equipment over a two year period. He testified that after repeated demands for payment met with no success the matter was turned over to the company’s attorney for collection. Under cross examination Mr. Holyfield admitted that it was not unusual for this type of equipment to be placed on a thirty day trial basis. As a matter of fact he stated that competition required that anywhere from thirty to ninety days be given to a prospective purchaser before financing arrangements are concluded.
Defendant testified that on the occasion of his initial conversation with Mr. Holy-field he expressed considerable skepticism concerning customer acceptance of the equipment and did not desire to obligate himself for the purchase price thereof. He stated that Mr. Holyfield agreed to send the equipment to him on a trial basis and that if it did not work out defendant “had nothing to lose”. Defendant further stated that he consistently informed Mr. Holyfield on each occasion after the initial placement of the equipment that he did not desire to purchase the equipment and made an offer to settle with plaintiff in accordance with a reading of a meter that is attached to each machine.
Defendant’s position is corroborated by the testimony of his son and an employee. Defendant’s son stated that he had worked with his father for five or six years and had known Mr. Holyfield for ten years and that he was present in the Stockyards Cafe when the initial discussion took place between Mr. Holyfield and his father. He emphasized that Mr. Holyfield insisted that his father try the machine without obligation. He further stated that his father maintained this position throughout the period of time that Mr. Holyfield attempted to get his father to agree to buy the machine.
Breland H. Garner, an employee of defendant, recalled that Mr. Holyfield came by defendant’s shop prior to his first discussion with defendant and told them that a new machine would.be out shortly, that is, the combination music box and viewer. He reiterated that Bonaventure agreed only to try the machine and not to purchase it and that if it was satisfactory to him he would give the matter further consideration.
Possibly the only disinterested witness in the entire case is Mr. James G. Williams, Jr., who was the proprietor of the Stockyards Cafe where the machine was first placed. Mr. Williams was asked if he would agree to place the machine in his cafe and to pay an additional $25.00 per week out of his share for the operation of the machine. Williams emphatically stated that he was not agreeable and did not participate any further in the conversation between Holyfield and Bonaventure. This testimony supports Bonaventure’s avowed skepticism.
Finally, we turn to Holyfield’s testimony on direct examination when in response to his own attorney’s interrogation he testified:
“Q To your understanding was there any question about this being a sale to Mr. Bonaventure?
A Not in my mind. Subsequent events have indicated that perhaps he believed this. Again I say this is going back a year and it’s difficult to recall exact details. It is not uncommon for us to place new items *811 —not these items in particular, not the ones that you referred to — ” (Emphasis ours)
This testimony cannot be classed as unequivocal for even plaintiff’s witness recognized that “perhaps” defendant did not intend to purchase the equipment. The testimony also indicates the custom of leaving equipment for trial.'
Based on the above testimony the trial judge held that the plaintiff had failed to prove an essential element of a valid agreement as required by CC Article 1779 which provides:
“Four requisites are necessary to the validity of a contract:
1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose.”
He concluded that there was no meeting of the minds therefore no consent.
This is in accord with the requirement of CC Article 2439 which provides:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.”
See also Claiborne Butane Company v. Hackler, 138 So.2d 234 (2d La.App., 1962).
It is recognized that consent may be expressed or implied (CC Article 1811). In the instant matter such consent must be implied by the continued use of the machine by defendant throughout the period of time defendant contends he did not desire to purchase the machine but was keeping it on trial basis. These actions could be considered presumptive evidence implying an agreement to pay. (CC Article 1816) Assuming arguendo that we have under consideration a situation involving implied consent we are satisfied that defendant has satisfactorily borne the burden of proving that his actions were not tantamount to consent by implication. Frankly, the evidence convinces us that plaintiff placed the machine on a trial basis hoping that its uniqueness would be attractive to defendant. Defendant on the other hand was skeptical of the equipment because of its uniqueness and consistently declined to obligate himself for the purchase. There is no dispute over the fact that within ninety days after the installation of this equipment at the Stockyards Cafe defendant refused to purchase the equipment. It was at that time that plaintiff should have removed the equipment or be forever silenced in his claim that defendant took advantage of him by refusing to make financial arrangements for the purchase thereof.
On the question of the amount awarded to plaintiff we find the formula used by the trial judge to be fair and equitable under the facts presented in this case. During the nine months that the equipment was in the care of defendant it grossed $4,692.00. It was established that the general practice in the trade was for the proprietor of the establishment where the machine was placed to receive one half of the gross and the owner of the equipment the other half. It was also established that about 10% of the gross represented maintenance and repairs. Under these facts the trial judge split the one half retained by the operator.
Plaintiff urges that if the decision of the trial judge is affirmed as to its main demand that the decision granting it judgment in the amount of $1,055.70 be affirmed. We think this request is fair and reasonable.
Defendant contends that plaintiff is entitled to have his day in court on the sole issue of whether or not a contract of sale *812 was perfected and since the trial judge determined that it was not, plaintiff is not entitled to any of the proceeds derived from the operation of the equipment. We do not think this position is warranted, reasonable or equitable. CC Article 1965.
As an aside we must note that notwithstanding the fact that the items of equipment though sold as a unit could be operated separately so that one could have music without dancing. Music lovers will be interested in knowing that the meter on the music box registered 41,000 instances of use as compared to only 3,952 for the dancers.
For the above and foregoing reasons the judgment of the district court is affirmed. The costs of court in the trial court is to be borne equally by plaintiff and defendant. The costs of this appeal is to be borne by defendant.
Affirmed.