CULPEPPER, Judge.
This is a suit for damages for breach of an initial letter agreement to later enter into a formal written lease. Plaintiff, a building contractor, agreed to construct an FM radio station and lease it to defendant. The initial agreement was conditioned on defendant obtaining an F.C.C. permit to operate the station and certain conditions regarding financing, etc. Plaintiff alleges that after all arrangements had been completed for the construction of the building and all terms agreed on for the formal lease agreement, defendant refused to sign the lease. From an adverse judgment, plaintiff appealed.
The general facts show that plaintiff and defendant entered into a written agreement, in the form of a letter dated August 25, 1964, whereby plaintiff agreed to con *176 struct a building and lease it to defendant for use as an FM radio station. This letter, addressed to defendant and signed by-plaintiff stated that it would “serve as my agreement, and when executed by you herein below, our agreement to enter into a formal act of lease after construction embodying normal and recommended business lease considerations, including but not exclusive of the following:”. Then followed the provisions for the location, size and type of building and for the terms and conditions of the lease. It was conditioned on defendant obtaining a Federal Communication Commission authorization for the station. Defendant signed accepting the agreement.
After defendant obtained an F.C.C. permit, plaintiff began to draw plans and specifications for the building, working with a representative of defendant as to its requirements. For several weeks there were discussions and negotiations regarding the building and the provisions to be included in the formal lease agreement. Finally, a meeting was held during April of 1965 in the office of Mr. Bennett Voorhies, Jr., an attorney and stockholder of the defendant corporation, for the purpose of “finalizing” the formal lease contract. Present at this meeting were Mr. VanWay, president and principal stockholder of plaintiff corporation, and his real estate advisor, Mr. Lloyd G. Smith. Representing defendant were its officers and stockholders.
The meeting lasted about 21/4 hours. One of the principal things discussed was Mr. VanWay’s requirement that the five stockholders of defendant corporation sign the lease to personally guarantee payment of the monthly rent installments due by this newly formed corporation. There was no provision in the letter agreement of August 25, 1964 for such personal guarantees. The testimony is in conflict as to whether defendant’s stockholders even orally agreed at the meeting in April of 1965 that they would sign the lease personally guaranteeing the rent.
At the conclusion of the meeting, Mr. Bennett Voorhies, Jr. was requested to draw a proposed lease agreement in conformance with the conclusions reached. Voorhies drew the lease, mailing copies to VanWay and to each of the stockholders of defendant. The letter of transmittal addressed to VanWay states that it contains a “copy of proposed lease.” At the bottom of the letter mailed to each of the stockholders along with the lease is contained the notation “Would each of you please review the lease and let me have your comments.”
A copy of the typed lease agreement filed in evidence shows that several pencil changes were made, some by Mr. VanWay, some by Mr. Voorhies and some by unknown persons. After a few days of further attempts to revise the lease so that it would be agreeable to all parties, the president of defendant corporation phoned VanWay and told him “The deal is off.” Plaintiff demanded that he at least be reimbursed his out-of-pocket expense for drawing plans, etc. This suit followed.
Plaintiff relies principally on the rationale of Knights of Pythias v. Fishel, 168 La. 1095, 123 So. 724, 725 (1929). In that case, decided on an exception of no cause of action, the petition alleged that plaintiff entered into a written agreement to make certain improvements and alterations to a building and lease it to defendant. All of the terms and provisions of the final lease were included in the original written agreement. After plaintiff drew all of the plans and specifications for the alterations and actually let the contract for Jhe work, defendant refused to sign the lease. The court held that the formal lease agreement contained the same terms agreed upon in the original written contract and that these were sufficient to constitute a valid lease. Hence plaintiff had stated a cause of action for defendant’s failure to execute the formal lease agreement.
Knights of Pythias v. Fishel, supra, is readily distinguishable from the present case. Here, the terms and provisions of *177 the formal lease agreement are substantially different from those contained in the original letter of August 25, 1964. For instance, the letter provided for 2800 square feet, whereas the lease provides for approximately 4800 square feet. The type of building is different. The letter agreement provided two 10-year renewal options to the lessee and the proposed lease was drawn this way but penciled notations change it to three additional 5-year options. Finally, the most serious change is that the letter contained no provision for personal guarantees by defendant stockholders that the monthly rentals would be paid, whereas the lease agreement requires such personal guarantees.
The present case falls within the jurisprudence that where the final written contract contemplated differs substantially from the initial agreement, neither party is obligated to sign the final agreement. Mermelstein v. Schwab, 64 So.2d 37 (Orl.La.App.1953); McIntire v. Industrial Securities Corp., 158 So. 849 (Orl.La.App.1935). The rationale of these cases is that there has been no meeting of the minds on the changed provisions of the final agreement. This is the situation here.
Furthermore, it is clear that even if the parties at the meeting in April of 1965 orally agreed to all of the new terms and provisions to be included in the final lease, they contemplated that it would not be binding until reduced to writing and signed. The jurisprudence is established that when the negotiating parties agree that the final contract will be reduced to writing and signed, it is not binding until this is accomplished and either party may refuse to abide by what was orally agreed upon. West v. Carbone, 150 So.2d 37 (La.App.) ; Stewart v. Schmauss, 191 So.2d 882 (La.App.); Rawlinson v. Moor, 68 So.2d 271 (La.App.).
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.