CUTRER, Judge.
This appeal arises out of a trial court judgment awarding damages to James Noel Flying Service, Inc.[1] (Noel Flying Service) as a result of a breach of contract by Rockwell International Corporation (Rockwell) for the sale of a jet airplane.
Noel Flying Service sued Rockwell for damages in the form of lost profits it would have realized in the resale of the aircraft Rockwell had allegedly contracted to sell to Noel Flying Service. Noel Flying Service alternatively sued in quantum meruit/un-just enrichment for compensation of its efforts which contributed to Rockwell’s subsequent sale of the same jet plane.
The trial court found that Noel Flying Service and Rockwell had entered a contract in which Noel Flying Service was to buy and Rockwell was to sell a particular aircraft. As this sale never occurred the trial court found that Rockwell breached its obligation to sell, and awarded Noel Flying Service $40,000.00 in damages. This is the amount of profit that the trial court found that Noel Flying Service would have realized had it been able to resell the aircraft Rockwell had allegedly agreed to sell to Noel Flying Service. Rockwell appealed. We reverse.
The issues of this appeal are:
(1) Whether a contract of sale for a jet plane entered into by Noel Flying Service and Rockwell existed; and
(2) If no contract of sale was entered, whether Noel Flying Service is entitled to relief under the principle of unjust enrichment.
FACTS
The facts of this case are somewhat complex. The situation began with Lafayette businessman, Robert Petifils, being interested in acquiring an airplane. Petifils notified Douglas Sonnier, president of Cypress Aviation, in February or March 1980 about the prospect of buying a plane. Cypress Aviation was owned by Sonnier, Petifils and three others. Petifils, who had known Sonnier for quite sometime, left the choice of the plane up to Sonnier. Sonnier had been flying a Rockwell Commander at the time. Being impressed with this plane, Sonnier decided the Rockwell Commander was the plane for Petifils.
Pursuant to Petifils’ request, Sonnier contacted Span Air, a Rockwell dealer. Span Air quoted Sonnier a price of $967,000.00 for a 1980 Rockwell Commander 840.
James Noel, president of Noel Flying Service, Inc. and a friend of Sonnier, approached Sonnier with the proposition that if Noel could purchase the plane that Sonnier wanted and either match or better the *981 price given by Span Air, Sonnier would buy the plane through Noel. Sonnier agreed to Noel’s proposition.
After contacting a number of people who either are or formerly were Rockwell dealers Noel got in touch with Pete Holcombe, a regional sales manager of Rockwell at that time, on or about February 27, 1980. Hol-combe’s duties consisted of securing orders for aircraft and finalizing these sales.
Conversations between Noel and Hol-combe ensued wherein Noel told Holcombe of his intention to consummate the sale of the plane to Petifils with Rockwell paying Noel Flying Service a commission. Hol-combe found out that Rockwell had a policy of not paying commissions to persons for the sale of a plane who were not under contract to Rockwell. In view of this Rockwell policy, Noel and Holcombe decided to pursue another procedure. This plan involved a sale of the plane to Noel and resale to Petifils. It was agreed that, to effectuate the sale-resale, Noel would obtain a purchase order from Petifils with a $35,-000.00 deposit. After this purchase order was consummated Noel would then execute a purchase order to Rockwell.
On March 7,1980, Holcombe went to Lafayette and presented Noel with Rockwell’s purchase order which included the price and description of the plane and a list of equipment to be installed on it. The base price of the plane was $927,000.00. The Rockwell purchase order was left at Noel’s office to be signed after Noel secured a purchase order from Petifils.
Noel went to Petifils and a purchase order was signed by Petifils and an acceptance of same was signed by Noel. A check for $35,000.00 was given to Noel as a deposit.
Holcombe returned to Lafayette later and picked up the Rockwell purchase order which had been signed by Noel. Holcombe returned to his office in Oklahoma with the Rockwell purchase order. Noel then mailed Noel Flying Service’s check to Holcombe for $35,000.00.
A few days after he signed the Rockwell purchase order Noel instigated a test flight in a similar airplane to Miami for Petifils and his associates. Holcombe made arrangements for the plane and a Rockwell pilot. The Rockwell pilot flew Petifils and his associates to Miami from Lafayette and returned the next day.
After the Miami trip, complications arose concerning the sale of the plane to Noel. Holcombe informed Noel that Rockwell would not accept the purchase order in the form as signed by Noel. Rockwell’s objection arose by virtue of a financing condition inserted by Noel after the purchase order was left with him by Holcombe. The purchase order, as prepared by Holcombe, in addition to describing the plane, also listed a number of pieces of special equipment to be installed on the plane. The order also contained the following provision inserted by Noel:

“PURCHASE PENDING ROCKWELL FINANCING OF ROBERT PETIFILS TERMS: 10 YEARS, 12% APR”

Holcombe informed Noel that Rockwell’s credit department had a policy of financing only purchasers who purchased directly from Rockwell. Petifils was not named as purchaser in the Rockwell purchase order. Noel Flying Service was named as purchaser. Since the Rockwell purchase order contained the clause inserted by Noel, conditioning the sale upon Rockwell financing Petifils’ purchase (a second purchaser), Rockwell refused to accept the purchase order. No further steps were taken by Noel to rectify the problem.
Shortly afterward, Rockwell, through Holcombe, sold the plane directly to Petifils for the price of $927,000.00, the same price that was quoted to Noel. Petifils arranged the financing with a bank in Lafayette.
Noel then filed suit alleging that he and Holcombe had consummated a contract of sale through their negotiations and that when he signed the purchase order and issued his check for $35,000.00 to Rockwell through Holcombe, the sales agreement was complete and enforceable.
*982 The trial court agreed with this position and rendered judgment awarding Noel $40,-000.00 as damages for the profits Noel had lost. We disagree.
WAS A CONTRACT CONSUMMATED?
We have concluded that the contract of purchase and sale of the plane was not consummated under the facts and circumstances presented.
From the inception of the sale-resale plan agreed to by Noel and Holcombe, it was undisputedly understood that such procedure would be consummated by the execution of the purchase orders from Petifils to Noel and from Noel to Rockwell. Noel was experienced in the purchase and sale of airplanes as this was his business which was conducted under the name of James Noel Flying Service, Inc. He was fully cognizant that a purchase order had to be signed by the proposed purchaser and accepted by the seller. The purchase order from Petifils to Noel is in evidence and contains provisions similar to those found in Rockwell’s purchase order. The two purchase orders, crucial to this appeal, contain the following provisions.
The agreement from Petifils to Noel provides as follows:

“This purchase agreement when accepted by James Noel Flying Service, Inc., becomes a binding contract of purchase and sale of the products shown hereon upon the terms and conditions herein specified. This agreement can be accepted for James Noel Flying Service, Inc. only by its President, or any corporate officer (hereinafter ‘authorized representative’). No other person has any authority, express or implied, to accept this agreement for James Noel Flying Service, Inc.”

The Rockwell purchase order provides as follows:

“This Purchase Order when accepted by Seller becomes a binding contract of purchase and sale of the airplane products shown on the face hereof, upon the terms and conditions thereon set forth and upon the following additional terms and conditions:

“This Purchase Order, when accepted by Seller, is the only contract controlling this purchase and sale. It contains all agreements between Purchaser and Seller and there are no other agreements, express or implied, either oral or in writing, and Purchaser acknowledges receipt of a copy of this Agreement. No part of this Purchase Order may be modified except by written agreement by both parties hereto. ”

It must be noted that each instrument requires the signature of both the seller and purchaser. Until this is complied with the contract is not consummated.
The record clearly reflects that these parties contemplated reducing their negotiations to writing and, upon execution of the written instruments, the contracts would be binding and enforceable.
Holcombe had no authority to approve the financing condition of Petifils’ purchase inserted in the Rockwell purchase order by Noel. Noel testified as follows in this regard:

“Q. Did you believe that Mr. Hol-combe had authority for financial approval?

“A. Not financial approval, no.

“Q. Is this the part that you said you added to the Rockwell purchase order?

“A. Right.”

Holcombe stated that he attempted to get Rockwell’s credit department to agree to finance Petifils’ purchase from Noel but Rockwell refused this request.
The Rockwell purchase order, containing the financing condition inserted by Noel and signed by him, provides that, when accepted by Rockwell, the purchase order “[i]s the only contract controlling this purchase and sale.”
It also provides that the instrument contains all the agreements by the parties and that “[t]here are no other agreements, express or implied, either oral or in writing. .
*983 Until this agreement was accepted and signed by Rockwell, it did not become an enforceable contract. The jurisprudence is well established that when parties agree to reduce their contract to writing, the contract is not perfected and there is no contract until the writing is duly executed. Brewer v. Loewer, 383 So.2d 1325 (La.App. 3rd Cir.1980), writ den., 391 So.2d 456 (La.1980).
In the case of Van Way v. Communications Broadcasting, Inc., 228 So.2d 175 (La. App. 3rd Cir.1969), writ ref’d, 229 So.2d 736 (La.1970), it is stated:
“... The jurisprudence is established that when the negotiating parties agree that the final contract will be reduced to writing and signed, it is not binding until this is accomplished and either nartv mav refuse to abide by what was orally aereed upon. West v. Carbone, 150 So.2d 37 (La.App.); Stewart v. Schmauss, 191 So.2d 882 (La.App.); Rawlinson v. Moor, 68 So.2d 271 (La.App.).” (Emphasis ours.)
Applying these principles to the facts at hand, we conclude that the parties contemplated that their agreement was to be reduced to writing before the contract would be binding on either party. Until such contract was executed by the parties, an enforceable contract did not come into existence. The trial court erred by ruling that the contract was consummated before accepted and signed by Rockwell and the judgment will be reversed in this regard.
UNJUST ENRICHMENT
Noel alternatively pleads that he is entitled to recovery contending that Rock-well was unjustly enriched as a result of the sale of the plane directly to Petifils.
The price that Rockwell received by a direct sale to Petifils ($927,000.00) was the same price that was set forth in the Rockwell purchase order signed by Noel. The only party that benefited from the failure of the sale-resale plan was Petifils who saved $40,000.00 (the amount of profit contemplated by Noel). Petifils is not before this court.
Since Rockwell was not enriched by the failure of the sale-resale plan, we cannot make an award on this basis of unjust enrichment.
Noel also contends that Rockwell was unjustly enriched by the profit it made through the sale of the plane which sale took place through the efforts and labor of Noel. We disagree. Petifils’ agent, Sonnier, had made a decision to buy a Rockwell plane and had gotten a price from Span Air of $967,000.00. After these negotiations with Span Air, Noel entered the picture asking that the purchase be made through him if he could match or better the price of Span Air. Noel was given the opportunity to accomplish this but failed to consummate a purchase of the plane from Rockwell. Noel lost the chance to make a $40,000.00 profit but it cannot be said that he was the reason for the purchase of the plane by Petifils. The decision to buy this particular type plane had been made before Noel entered the negotiations. We cannot say that Rockwell was unjustly enriched by making the sale directly to Petifils. A recovery on the basis of unjust enrichment will be denied.
For the reasons set forth, the judgment of the trial court shall be reversed and set aside. Judgment is hereby rendered in favor of Rockwell International Corporation and against James Noel Flying Service, Inc., dismissing the suit. Costs of the trial court and this appeal are to be paid by plaintiff-appellant.
REVERSED AND RENDERED.

. James Noel was president of this corporation and we will refer to him as “Noel.”